UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------

                          :

TRUSTEES OF PAINTING INDUSTRY    :       CASE NO. 1:14-CV-00313
INSURANCE FUND, ET AL.             :
                          :

           Plaintiffs,            :
                          :

vs.                                 :       OPINION & ORDER
                          :       [Resolving Doc. 25]

GLASS FABRICATORS, INC.         :
                          :

           Defendant.           :

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

     In this action seeking recovery of allegedly delinquent employer contributions to employee

benefits funds, Plaintiffs Trustees of Painting Industry Insurance Fund, Trustees of Painting Industry

Profit Sharing Annuity Plan, and Trustees of the Cleveland Glass and Glazing Industry Pension Plan

move for summary judgment.[1]  Defendant Glass Fabricators, Inc., opposes.[2]  For the following

reasons, the Court **DENIES** Plaintiffs' motion.

## I. Background

     This case arises under provisions of the Labor Management Relations Act[3] and the Employee

Retirement Income Security Act (ERISA)[4] that allow employee benefits funds to sue employers for

delinquent contributions.  Defendant Glass Fabricators, Inc., is a business operating in northern Ohio

that makes glass products including windows, lighting fixtures, and various industrial components

---

[1] Doc. 25.
[2] Doc. 26.
[3] 29 U.S.C. § 185.
[4] 29 U.S.C. §§ 1132, 1145.

Case No. 1:14-CV-00313
Gwin, J.

and parts.[5/] In 2011, Defendant agreed to a Collective Bargaining Agreement (CBA) negotiated between the Construction Employers Association, the Glazing Contractors Association of Northeast Ohio, the International Union of Painters and Allied Trades, District Council No. 6, and the Glaziers Local Union No. 181.[6/] Among other things, the CBA requires Defendant to make reports and payments to the employee benefits funds for which Plaintiffs are trustees.[7/]

On February 13, 2014, Plaintiffs brought this action seeking to collect delinquent payments that Defendant allegedly owes the funds along with associated interest, liquidated damages, and attorney's fees.[8/] Based on an audit that was completed on September 22, 2014, Plaintiffs claim Defendant is short $132,734.51 in required payments since January 1, 2012.[9/] In addition, Plaintiffs claim liquidated damages of $13,273.45 and interest totaling $22,582.96.[10/]

Defendant disputes the results of Plaintiffs' audit. Although Defendant admits to having been previously delinquent in making required contributions, it says that it has now paid all its obligations. Defendant points to several alleged inaccuracies in Plaintiffs' audit to explain the source of the disagreement over what Defendant owes. First, Defendant says that the audit does not account for $89,872.12 in cash payments made between August 15, 2012, and December 31, 2013.[11/] Second, Defendant says Plaintiffs have already obtained a judgment in Ohio state court that settles a $37,510.60 debt owed on a promissory note given by Defendant, and that therefore that amount

---

[5/]Doc. 26 at 2.
[6/]Doc. 1-1.
[7/]*Id.* at 10–15.
[8/]Doc. 1.
[9/]Doc. 25-1.
[10/]*Id.*
[11/]Doc. 26 at 8–9.

Case No. 1:14-CV-00313
Gwin, J.

should not be involved in this suit.[12]  Third, Defendant says Plaintiffs have already received $14,777.17 in payments that were obtained through a mechanic's lien on general contractor Fred Olivieri Construction relating to one of Defendant's projects (the "Olivieri lien").[13]  Fourth, Defendant says Plaintiffs have incorrectly claimed delinquent contributions worth $43,535.90 for seventeen individuals who are not subject to the CBA.[14]  Furthermore, Defendant says that in any event it is not obligated to pay liquidated damages, interest, or attorney's fees.[15]

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[16] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[17]  Once the moving party has done so, the non-moving party must set forth specific facts in the record   not its allegations or denials in pleadings   showing a triable issue.[18]  The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[19]  But the Court will view the facts and all reasonable inferences from those facts in favor of the non-moving party.[20]

## III. Analysis

---

[12]/*Id.* at 9–10.

[13]/*Id.* at 10–11.

[14]/*Id.* at 11–12.

[15]/*Id.* at 12–15.

[16]/*Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. Pro. 56(a)).

[17]/*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[18]/*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[19]/*Id.* at 586.

[20]/*Killion*, 761 F.3d at 580 (internal citation omitted).

Case No. 1:14-CV-00313
Gwin, J.

The primary question in this motion   whether Plaintiffs' audit is accurate   cannot be answered based on the evidence before the Court.  Any math student knows she must show her work to receive full credit.  Plaintiffs' audit does not meet this requirement.  As a result, their motion for summary judgment loses.

Plaintiffs' audit was done by Shawn Kroeger, the funds' Administrative Manager.  It primarily consists of a chart showing what he claims to be the amounts owed by Defendant.[21]  This summary table shows what appears to be the total number of hours worked by Defendant's employees from 2012 to 2014.  These hourly totals are then multiplied by the required contributions to calculate how much Defendant owes.

Defendant does not seem to dispute Kroeger's arithmetic in the chart.  Instead, it argues that he has failed to give Defendant credit for certain payments.[22]  Both Plaintiffs and Defendant agree that (1) Defendant paid the funds $89,876.12 in cash, (2) Plaintiffs obtained a judgment on a promissory note worth $37,510.60, and (3) Plaintiffs have been paid $14,777.17 from the Olivieri lien.  Defendant says these amounts should be set off against the bill Kroeger calculated and presented through the chart.

In response, Plaintiffs say Kroeger already credited these amounts   a total of $142,163.89   against work performed in 2012 and 2014.[23]  To support this, they do not point to any calculations in the audit itself   because there are none   or to any underlying financial statements   because they have not included them with this motion.  They offer some explanation through an affidavit from Kroeger, but as explained below, these explanations are ultimately

_____

[21]/Doc. 25-2 at 1.
[22]/Doc. 26 at 8–11.
[23]/Doc. 27 at 3, 4.

-4-

Case No. 1:14-CV-00313
Gwin, J.

inadequate to justify granting summary judgment.

Kroeger asserts in his affidavit that he accounted for $89,876.12 in checks paid by Defendant when doing the audit.  He offers a worksheet that shows $89,876.12 in checks were received.[24]  The worksheet suggests that three of the checks, worth a total of $46,876.12, were applied to amounts owed from years before 2012.  But without more background information about the status of the Plaintiffs' funds, there is not enough context to determine whether this accounting was correct.  In any event, even if Kroeger's accounting as to these three checks is correct, he still fails to account for exactly where the other $43,000 went.  The checks are listed on the worksheet as having been received, and his affidavit says that they were applied to amounts owed.  But because Kroeger does not show his work, once again it is impossible to know whether this was done correctly, if at all.

Kroeger does not even attempt to explain how he accounted for the $37,510.60 Ohio state court judgment on Defendant's promissory note in his audit.  He says he accounted for it, but provides no specifics.[25]

Kroeger does little better with accounting for the $14,777.17 that Plaintiffs obtained from the Olivieri lien.  Defendant was owed money from Fred Olivieri Construction as payment on a project.[26]  Plaintiffs obtained a mechanic's lien on Olivieri and others, which was settled for $14,777.17 on July 17, 2014.[27]  Kroeger provides a worksheet purporting to show delinquent contributions that were offset.[28]  He says that he used this amount to reduce the number of hours

---

[24] Doc. 27-2.

[25] Doc. 27-1 at 4.

[26] Doc. 26-1 at 3.

[27] *Id.*; Doc. 27-1 at 5.

[28] Doc. 27-3.

-5-

Case No. 1:14-CV-00313
Gwin, J.

each employee claims to have worked.  While this worksheet somewhat supports Kroeger's affidavit, it ultimately raises more questions than it answers.  The number $14,777.17 appears on it next to the description "Paid by Lien."  But this entry hangs on its own, without any corresponding entry anywhere else on the chart.  In short, there is no explanation as to what this chart actually accomplishes.  Without context for where the numbers in the chart come from or what they are meant to represent, it is impossible to understand where credit is being applied, if at all.  Furthermore, no explanation is given for why this method of crediting is used, so the Court cannot determine whether it should be viewed as reliable in the context of the audit as a whole.

Rather than showing their work, Plaintiffs rely on the argument that Kroeger's audit must have included the amounts disputed by Defendant because, otherwise, Plaintiffs would have been asking for more money.  They say the simple fact that because the amounts they have requested for work performed in 2012 and 2014 are less than the credits Defendant claims, Kroeger must have already accounted for them.[29]  There is some logic to this.  But without knowing the starting point for what was owed to which fund, and when, and why, it is impossible to determine whether Kroeger's calculations are correct.[30]  The audit does not provide context for its conclusions.

---

[29]/See Doc. 27 at 3–4.

[30]/Perhaps a stylized example will help clarify the problem.  Assume that XYZ Corporation owes ABC Fund $100,000 in delinquent contributions.  XYZ Corporation pays $80,000 of that debt.  ABC Fund sues XYZ Corporation, claiming it is still owed $40,000.  This is obviously incorrect, as XYZ Corporation actually owes $20,000.  ABC Fund can point to its records and show that it received the $80,000 payment.  Furthermore, it can argue that it must have taken this $80,000 into account, because otherwise it would have been asking for at least $80,000, rather than the $40,000 it claims.  But there is no way for an outside observer to know whether ABC Fund's claim for $40,000 is justified without knowing both that the starting point was $100,000 and that the $80,000 was used to offset this debt.  If, however, ABC Fund showed its work, everyone would be able to check it and the error could be corrected.  Without this information, taking ABC Fund at its word would be unjustified.

This is not to say that Plaintiffs in this case are actually claiming more than they are owed.  It is possible that Kroeger's calculations are correct.  All this example is meant to demonstrate is that the Plaintiffs have not established that no reasonable jury could conclude otherwise.  Thus, summary judgment is inappropriate at this time.

Case No. 1:14-CV-00313
Gwin, J.

In contrast, there does not appear to be any genuine issue of material fact that Defendant would owe contributions for the seventeen employees who Defendant claims "either were not union employees . . . nor were they performing work for the Union . . . ."[31] Defendant does not seem to dispute that these seventeen individuals worked for Glass Fabricators, just that the work they did was not covered by the CBA. To support this claim, Defendant presents no factual argument about what the employees did instead, nor any legal argument about what work should or should not be covered under the CBA. By contrast, Plaintiffs offer affidavits from six of these individuals who state that they worked for Defendant and only performed work that would be covered under the CBA.[32]

Nevertheless, the issues raised by Defendant with respect to the audit prevent the Court from granting summary judgment.[33] Plaintiffs say Defendant cannot refute the results of the audit because Defendant's employees "did not conduct the audit at issue in this case and would have no basis to determine whether [the disputed amounts] were accounted for in the audit."[34] This argument, while intended to save Plaintiffs' motion, instead exposes its fundamental flaw. Nobody can check Kroeger's work. Taking all inferences in Defendant's favor, as the Court must, the Court concludes that Plaintiffs have therefore failed to show the absence of a genuine issue of material fact. Defendant has exposed a hole in Plaintiffs' case that Plaintiffs have not been able to fill. A reasonable jury could certainly conclude that Plaintiffs have failed to meet their burden of proof.

Because Defendant's liability cannot be determined at this time, the Court cannot determine what amount of interest, liquidated damages, or attorney's fees would be appropriate. These can

---

[31]/Doc. 26 at 11; *see also* Doc. 26-1 at 3.

[32]/*See* Doc. 27-4; Doc. 27-5; Doc. 27-6; Doc. 27-7; Doc. 27-8; Doc. 27-9.

[33]/*See, e.g., Nw. Ohio Adm'rs, Inc. v. Laas,* No. 12-cv-424, 2012 WL 5986995, at *6 (N.D. Ohio Nov. 29, 2012) (denying summary judgment when defendants sufficiently cast doubt on the accuracy of plaintiff's audit).

[34]/Doc. 27 at 3–4.

-7-

Case No. 1:14-CV-00313
Gwin, J.

only be determined after the amount the employer owes in delinquent payments has been

established.[35/]  The Court notes, however, that if Defendant is found to be liable, ERISA mandates

that the Court the award  "interest on the unpaid contributions," "an amount equal to the great of .

. . interest on the unpaid contributions, or . . . liquidated damages provided for under the plan," and

"reasonable attorney's fees and costs of the action."[36/]

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion for summary judgment.

IT IS SO ORDERED.


Dated: November 25, 2014                                    s/         *James S. Gwin*
                                                           JAMES S. GWIN
                                                           UNITED STATES DISTRICT JUDGE

---

[35/]*See, e.g.*, *Nw. Ohio Adm'rs, Inc.*, 2012 WL 5986995, at *7.

[36/]*See* 29 U.S.C. § 1132(g)(2).   Defendant's arguments that interest and liquidated damages should not be available are unpersuasive given the mandatory nature of this language, and their argument that attorney's fees are discretionary is based on caselaw discussing a different ERISA provision.